AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT
### for the
Eastern District of Missouri

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>Precision Location Information; Subscriber &<br>Transactional Records; Cell Site Information; Pen<br>Register & Trap-and-Trace for Phone # (747) 243-8703. | ) ) ) ) ) ) | Case No. 4:25 MJ 7221 SPM<br>SIGNED AND SUBMITTED TO THE COURT<br>FOR FILING BY RELIABLE ELECTRONIC MEANS |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A.

located in the _____ District of _____ NEW JERSEY _____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

- ❏ evidence of a crime;
- ❏ contraband, fruits of crime, or other items illegally possessed;
- ❏ property designed for use, intended for use, or used in committing a crime;
- ☑ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| Title 21, U.S.C., 841, 846 | conspiracy to distribute and possess with the intent to distribute controlled substances |

The application is based on these facts:

☑ Continued on the attached sheet.

❏ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

I state under the penalty of perjury that the foregoing is true and correct.

_____
*Applicant's signature*

Drew Polan, Senior Inspector, USMS
*Printed name and title*

Sworn to, attested to, or affirmed before me via reliable electronic means pursuant to Federal Rules of Criminal Procedure 4.1 and 41.

Date: _____ 07/29/2025 _____

_____
*Judge's signature*

City and state: _____ St. Louis, MO _____

Hon. Shirley P. Mensah, U.S. Magistrate Judge
*Printed name and title*

## ATTACHMENT A

The United States has submitted an application pursuant to 18 U.S.C. §§ 2703(c)(1)(A) &
B, (c)(2), and 3122 and Federal Rule of Criminal Procedure 41 requesting that the Court issue a
Warrant and Order requiring a telecommunications service provider reflected in Part II of this
Attachment A, to disclose the records and other information concerning the account described in
Part I of this Attachment A.

### I.      The Account(s)

The Order applies to certain records and information associated with the following:

| Provider Name | Number or identifier | Owner, if known | Subject of investigation, if known |
|---------------|----------------------|-----------------|-------------------------------------|
| T-MOBILE | **(747) 243-8703** (the **subject cellular telephone**) | Unknown | **Jonathan WARD** |

### II.     The Provider

Records and information associated with the **subject cellular telephone** that is within the
possession, custody, or control of T-MOBILE, and other applicable service providers reflected on
the list contained in this Attachment A, including information about the location of the **subject
cellular telephone** if it is subsequently assigned a different call number.

1

## LIST OF TELECOMMUNICATION SERVICE PROVIDERS

| | | | |
|---|---|---|---|
| 01 Communications | Egyptian Telephone | Mid-Atlantic | Socket Telecom |
| Access Line Communication | Electric Lightwave, Inc. | Midvale Telephone Exchange | Spectrum |
| ACN, Inc. | Empire Paging | Mobile Communications | Sprint |
| ACS | Ernest Communications | Mound Bayou Telephone Co. | SRT Wireless |
| Aero Communications, Inc. (IL) | EZ Talk Communications | Mpower Communications | Star Telephone Company |
| Afford A Phone | FDN Communications | Navigator | Start Wireless |
| Airvoice Wireless | Fibernit Comm | Telecommunications | Sugar Land Telephone |
| Alaska Communications | Florida Cell Service | NE Nebraska Telephone | Sure West Telephone Company |
| Alhambra-Grantfx Telephone | Florida Digital Network | Netlink Comm | Talk America |
| Altice USA | Focal Communications | Network Services | Tele Touch USA |
| AmeriTel | Frontier Communications | Neustar | Telecorp Comm |
| AOL Corp. | FuzeBox, Inc. | Neutral Tandem | Telepak |
| Arch Communication | Gabriel Comm | Nex-Tech Wireless | Telispire PCS |
| AT&T | Galaxy Paging | Nexus Communications | Telnet Worldwide |
| AT&T Mobility | Global Communications | NII Comm | Tex-Link Comm |
| Bell Aliant | Global Eyes Communications | North Central Telephone | Time Warner Cable |
| Big River Telephone | Global Naps | North State Comm | T-Mobile |
| Birch Telecom | Grafton Telephone Company | Northcoast Communications | Total Call International |
| Blackberry Corporation | Grand River | Novacom | Tracfone Wireless |
| Brivia Communications | Grande Comm | Ntera | Trinity International |
| Broadview Networks | Great Plains Telephone | NTS Communications | U-Mobile |
| Broadvox Ltd. | Harrisonville Telephone Co. | Oklahoma City SMSA | United Telephone of MO |
| Budget Prepay | Heartland Communications | ONE Communications | United Wireless |
| Bulls Eye Telecom | Hickory Telephone | ONSTAR | US Cellular |
| Call Wave | Huxley Communications | Optel Texas Telecom | US Communications |
| Cbeyond Inc. | iBasis | Orion Electronics | US LEC |
| CCPR Services | IDT Corporation | PacBell | US Link |
| Cellco Partnership, | Illinois Valley Cellular | PacWest Telecom | US West Communications |
| d/b/a Verizon Wireless | Insight Phone | PAETEC Communications | USA Mobility |
| Cellular One | Integra | Page Plus Communications | VarTec Telecommunications |
| Cellular South | Iowa Wireless | Page Mart, Inc. | Verisign |
| Centennial Communications | IQ Telecom | Page Net Paging | Verizon Telephone Company |
| CenturyLink | J2 Global Communications | Panhandle Telephone | Verizon Wireless |
| Charter Communications | Leap Wireless International | Peerless Network | Viaero Wireless |
| Chickasaw Telephone | Level 3 Communications | Pineland Telephone | Virgin Mobile |
| Choctaw Telephone Company | Locus Communications | PhoneTech | Vonage Holdings |
| Cimco Comm | Logix Communications | PhoneTel | Wabash Telephone |
| Cincinnati Bell | Longlines Wireless | Preferred Telephone | Wave2Wave Communications |
| Cinergy Communications | Los Angeles Cellular | Priority Communications | Weblink Wireless |
| Clear World Communication | Lunar Wireless | Puretalk | Western Wireless |
| Com-Cast Cable Comm. | Madison River | RCN Telecom | Westlink Communications |
| Commercial Communications | Communications | RNK Telecom | WhatsApp |
| Consolidated Communications | Madison/Macoupin Telephone | QWEST Communications | Windstream Communications |
| Cox Communications | Company | Sage Telecom | Wirefly |
| Cricket Wireless | Mankato Citizens Telephone | Seren Innovations | XFinity |
| Custer Telephone Cooperative | Map Mobile Comm | Shentel | XO Communications |
| DBS Communications | Marathon Comm | Sigecom LLC | Xspedius |
| Delta Communications | Mark Twain Rural | Sky Tel Paging | Yakdin Valley Telephone |
| Detroit Cellular | Max-Tel Communications | Smart Beep Paging | YMAX Communications |
| Dobson Cellular | Metro PCS | Smart City Telecom | Ztel Communications [1] |
| | Metro Teleconnect | | |

[1] Last Update: 03/17/2019

**ATTACHMENT B**

It is hereby ordered, pursuant to 18 U.S.C. §§ 2703(c)(1)(A) &(B), (c)(2) and 3123 and Federal Rule of Criminal Procedure 41, that the Provider(s) identified in Attachment A shall disclose to the United States the following:

## I.    PRECISION LOCATION INFORMATION

### A.    Information to be Disclosed by the Provider

All information for the following time period of forty-five days from the date of this Warrant and Order, that is for the time period from July 29, 2025, to September 11, 2025, 11:59 p.m. (CT) during all times of day and night, regarding the location of the **subject cellular telephone** described in Attachment A.

"Information about the location of the **subject cellular telephone**" includes all available E-911 Phase II data, GPS data, latitude-longitude data, and other precision location information, as well as all data about which "cell towers" (*i.e.*, antenna towers covering specific geographic areas) and "sectors" (*i.e.*, faces of the towers) received a radio signal from the cellular telephone described in Attachment A.

To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of the Provider, the Provider is required to disclose the Location Information to the investigative agency(ies).

### B.    Information to Be Seized by the United States

All information described above in Part I, Section A that will assist in arresting **Jonathan WARD**, who was charged with violating Title 21, United States Code, Sections 841(a)(1) and

1

846 and is the subject of an arrest warrant issued on May 28, 2025, and is a "person to be arrested" within the meaning of Federal Rule of Criminal Procedure 41(c)(4).

## II.    CELL TOWER RECORDS AND OTHER TELECOMMUNICATION DATA

For the **subject cellular telephone** identified in Attachment A, the following telecommunication records, and information, but not the contents of any communication for the past thirty (30) days from the date of this Warrant and Order and at reasonable intervals for up to forty-five (45) days from the date of this Warrant and Order, the following:

### Information to be Disclosed by the Provider

1.    All available names, addresses, and identifying information, and other subscriber and service feature information and types of service utilized;

2.    Length of service;

3.    All telephone numbers, Electronic Serial Number ("ESN"), a Mobile Electronic Identity Number ("MEIN"), a Mobile Identification Number ("MIN"), a Subscriber Identity Module ("SIM"), an International Mobile Subscriber Identifier ("IMSI"), a Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"), or an International Mobile Station Equipment Identity ("IMEI")  numbers, including any and all customer service records, credit and billing records, can-be-reached numbers (CBR), enhanced custom calling features, and primary long-distance carrier;

4.    Subscriber information available for any originating telephone number;

5.    Automated Messaging Accounting (AMA) records (a carrier billing mechanism data base search which provides records of originating and terminating caller information for calls to the **subject cellular telephone**) for the above-specified time period;

2

6.      Means and source of payment for services, including any credit card or bank account number, and air-time summaries for available service periods, for the IP (internet protocol) addresses being utilized by and signaled to and from the aforementioned **subject cellular telephone**;

7.      Cellular telephone records and information pertaining to the following, for the above-specified time period:

(a)      call detail information such as (provided in an electronic format specified by the agents/officers of the investigative agency(ies), and other authorized federal/state/local law enforcement agencies);

(b)      cell site activation information, including information identifying the antenna tower receiving transmissions from the **subject cellular telephone** number, and any information on what portion of that tower is receiving a transmission from the **subject cellular telephone** number, at the beginning and end of a particular telephone call made to or received by the **subject cellular telephone** number;

(c)      numbers dialed;

(d)      call duration;

(e)      incoming numbers if identified;

(f)      signaling information pertaining to that number;

(g)      a listing of all control channels and their corresponding cell sites;

(h)      an engineering map showing all cell site tower locations, sectors, and orientations;

3

        (i)     subscriber information, including the names, addresses, credit, and billing information, published and non-published for the telephone numbers being dialed from the **subject cellular telephone**;

        (j)     historical location estimates and range to tower information, such as Network Event Location System (NELOS), round-trip time (RTT), GPS, and per-call measurement data (PCMD), True Call; and,

        (k)     Internet Protocol (IP addresses) utilized by and signaled to and from the **subject cellular telephone**.

## III.    PEN REGISTERS AND TRAP AND TRACE DEVICES

For the **subject cellular telephone** identified in Attachment A for a period of forty-five (45) days from the date of this Warrant and Order, the following:

1.    Pursuant to Title 18, United States Code, Section 3123, pen register and trap and trace devices, including enhanced caller identification, may be installed by the investigative agency(ies) and used to record or decode dialing, routing, addressing, or signaling information, and to capture the incoming electronic or other impulses, which identify the originating number or other dialing, routing, addressing and signaling information reasonably likely to identify the source of a wire or electronic communication to and from the **subject cellular telephone** number, including the direct connect, Voice-over-LTE (VoLTE), non-content data transmissions, or digital dispatch dialings (if applicable), the dates and times of such dialings, and the length of time of the connections, pertaining to the **subject cellular telephone** described in Attachment A, including the date, time, and duration of the communication, and the following, without geographic limit, including:

4

a. IP addresses associated with the cell phone device or devices used to send or receive electronic communications;

b. Any unique identifiers associated with the cell phone device or devices used to make and receive calls with cell phone number described in Attachment A, or to send or receive other electronic communications, including the ESN, MEIN, IMSI, IMEI, SIM, MSISDN, or MIN;

c. IP addresses of any websites or other servers to which the **subject cellular telephone** connected;

d. Source and destination telephone numbers and email addresses;

e. "Post-cut-through dialed digits," which are digits dialed after the initial call set up is completed, subject to the limitations of 18 U.S.C. § 3121(c).

2.      The Provider, and/or any telecommunications service providers reflected in Attachment A, to include providers of any type of wire and/or electronic communications, and any other applicable service providers, shall initiate caller identification on the **subject cellular telephone** identified in Attachment A, without the knowledge of or notification to the subscriber, for the purpose of registering incoming telephone numbers.

3.      The Providers reflected in Attachment A, to include providers of any type of wire and/or electronic communications, and any other applicable service providers, shall furnish the agents/officers of the investigative agency(ies), and other authorized federal/state/local law enforcement agencies, forthwith all information, facilities, and technical assistance necessary to accomplish the installation and use of the pen register and trap and trace devices, including

enhanced caller identification, unobtrusively and with minimum interference to the services that are accorded persons with respect to whom the installation and use is to take place.

4. The Providers reflected in Attachment A, to include providers of any type of wire and/or electronic communications, and any other applicable telecommunications service providers, shall provide the agents/officers of the investigative agency(ies), and other authorized federal/state/local law enforcement agencies, with the results of the pen register and trap and trace devices, including enhanced caller identification, at reasonable intervals for the duration of this Warrant and Order.

5. Should the **subject cellular telephone** identified in Attachment A and/or ESN, MIN, IMEI, MSID or IMSI number listed above be changed by the subscriber during the effective period of this Order, the request for pen register and trap and trace devices, including enhanced caller identification, shall remain in effect for any new telephone to which the **subject cellular telephone** listed above is changed throughout the effective period of these Warrants and Orders.

6. The Providers reflected in Attachment A, to include providers of any type of wire and/or electronic communications, and any other applicable service providers, shall be provided compensation by the lead investigative agency for reasonable expenses incurred in providing technical assistance.

7. Pursuant to Title 18, United States Code, Sections 3123(d)(1) and (2), the Provider, and the service providers reflected in Attachment A, to include providers of any type of wire and/or electronic communications, and any other applicable service providers, shall not disclose the existence of this application and/or any warrant or order issued upon this application, or the existence of the investigation, for a period of one year from the date of this Order to a subscriber

or lessee or to any other person, except that the provider may disclose the warrant to an attorney for the provider for the purpose of receiving legal advice.

This Warrant and Order does not authorize interception of any communications as defined in Title 18, United States Code, Section 2510(4), but authorizes only the disclosure of signaling information, including cell site information, precision location information, including GPS information, related to the **subject cellular telephone**.

The investigative agency(ies), and other authorized federal/state/local law enforcement agencies, to whom this Warrant and Order is directed will begin monitoring the location of the **subject cellular telephone** by one of the methods described in this Warrant within ten (10) days of the date of this Warrant and Order.

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| IN THE MATTER OF AN APPLICATION | ) | |
| OF THE UNITED STATES OF AMERICA | ) | |
| FOR A WARRANT TO OBTAIN | ) | No.  4:25 MJ 7221 SPM |
| LOCATION INFORMATION, INCLUDING | ) | |
| PRECISION LOCATION INFORMATION; | ) | |
| SUBSCRIBER AND TRANSACTIONAL | ) | **FILED UNDER SEAL** |
| RECORDS; CELL SITE INFORMATION; | ) | |
| AND FOR A PEN REGISTER AND TRAP | ) SIGNED AND SUBMITTED TO THE COURT FOR FILING |
| AND TRACE DEVICES FOR PHONE | ) BY RELIABLE ELECTRONIC MEANS |
| NUMBER **(747) 243-8703**. | ) | |

## AFFIDAVIT

I, Drew Polan, being first duly sworn via reliable electronic means, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1.     I make this affidavit in support of an application for a warrant and order pursuant to Rule 41 and 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) for information associated with a cellular telephone **(747) 243-8703** (hereinafter referred to as the "**subject cellular telephone**") to require T-MOBILE (hereinafter "the Provider"), and/or any service providers reflected in Attachment A, to include providers of any type of wire and/or electronic communications, and any other applicable service providers, to disclose to the United States location information, including precision location information, transactional and subscriber data and cell site location information, and the installation and use of other pen register and trap and trace devices associated with the **subject cellular telephone**, as described in Attachment B to the requested warrant and order.

1

2.      I, Drew Polan, am a Senior Inspector with the United States Marshals Service ("USMS") and, as such, I am charged with enforcing all laws in all jurisdictions of the United States, its territories and possessions. My current duty assignment is in the Investigative Operations Division, Organized Crime and Gangs Branch. My assignment obligates me to investigate, locate, and apprehend fugitives, and support fugitive investigative efforts and program goals on behalf of the USMS. I have been employed with the USMS for 17 years and have a cumulative total of 19 years of experience as a federal law enforcement officer. I have been assigned fugitive investigations for more than 12 years and have been the lead investigator in more than 950 fugitive investigations, in addition to providing investigative assistance in hundreds of others. My experience also includes the utilization of various electronic surveillance measures, empowered through legal process, in over 145 fugitive investigations. These measures include telecommunications intercepts, internet intercepts (including log files, originating IP addresses, methods and locations of connections), open-source investigations, and global positioning systems/radio frequencies tracking devices as they relate to fugitive investigations.

3.      The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

4.      The present affidavit is being submitted in connection with an application of the United States for a warrant and order authorizing agents/officers of the investigative agency(ies), and other authorized federal/state/local law enforcement agencies, to obtain location information, including precision location information, cell site location information, and other signaling

2

information, including pen register information, in an effort to locate and monitor the location of the **subject cellular telephone**.

5.      The USMS has probable cause to believe that the **subject cellular telephone** is currently being used by Jonathan WARD, who is the subject of an active federal arrest warrant. On May 28, 2025, in the Eastern District of Missouri, an arrest warrant was issued for WARD, charging conspiracy to distribute and possess with the intent to distribute a mixture of substance containing a detectable amount of actual methamphetamine, a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and 846. WARD, and several others, were charged in case 4:25CR286 HEA/PLC. WARD's whereabouts are presently unknown. There is also probable cause to believe that the location information described in Attachment B to the requested warrant and order will lead to the location of Jonathan WARD in order to effectuate his arrest.

### BACKGROUND CONCERNING WIRELESS PROVIDERS

6.      Based on my knowledge, training, and experience, as well as information provided by investigators with specialized experience relating to cellular telephone technology, I am aware of the following facts and considerations:

a.      Wireless phone providers typically generate and retain certain transactional information about the use of each telephone call, voicemail, and text message on their system. Such information can include log files and messaging logs showing all activity on a particular account, such as local and long distance telephone connection records, records of session times and durations, lists of all incoming and outgoing telephone numbers or other addressing information associated with particular telephone calls, voicemail messages, and text or multimedia messages.

3

b.      Wireless phone providers also typically generate and retain information about the location in which a particular communication was transmitted or received. For example, when a cellular device is used to make or receive a call, text message or other communication, the wireless phone provider will typically generate and maintain a record of which cell tower(s) was/were used to process that contact. Wireless providers maintain information, including the corresponding cell towers (i.e., tower covering specific geographic areas), sectors (i.e., faces of the towers), and other signaling data as part of their regularly conducted business activities. Typically, wireless providers maintain records of the cell tower information associated with the beginning and end of a call.

c.      Because cellular devices generally attempt to communicate with the closest cell tower available, cell site location information from a wireless phone provider allows investigators to identify an approximate geographic location from which a communication with a particular cellular device originated or was received.

d.      Wireless providers may also retain text messaging logs that include specific information about text and multimedia messages sent or received from the account, such as the dates and times of the messages. A provider may also retain information about which cellular handset or device was associated with the account when the messages were sent or received. The provider could have this information because each cellular device has one or more unique identifiers embedded inside it. Depending upon the cellular network and the device, the embedded unique identifiers for a cellular device could take several different forms, including an Electronic Serial Number ("ESN"), a Mobile Electronic Identity Number ("MEIN"), a Mobile Identification Number ("MIN"), a Subscriber Identity Module ("SIM"), an International Mobile Subscriber Identifier ("IMSI"), a Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"), or an International Mobile Station Equipment Identity ("IMEI"). When a cellular

4

device connects to a cellular antenna or tower, it reveals its embedded unique identifiers to the cellular antenna or tower in order to obtain service, and the cellular antenna or tower records those identifiers.

  e. Wireless providers also maintain business records and subscriber information for particular accounts. This information could include the subscriber's full name and address, the address to which any equipment was shipped, the date on which the account was opened, the length of service, the types of service utilized, the ESN or other unique identifier for the cellular device associated with the account, the subscriber's Social Security Number and date of birth, all telephone numbers and other identifiers associated with the account, and a description of the services available to the account subscriber. In addition, wireless providers typically generate and retain billing records for each account, which may show all billable calls (including outgoing digits dialed). The providers may also have payment information for the account, including the dates and times of payments and the means and source of payment (including any credit card or bank account number).

  f. Providers of cellular telephone service also typically have technical capabilities that allow them to collect and generate more precise location information than that provided by cell site location records. This information is sometimes referred to as E-911 phase II data, GPS data or latitude-longitude data. In the Eastern District of Missouri, such information is often referred to as precision location information or PLI data. E-911 Phase II data provides relatively precise location information about the cellular telephone itself, either via GPS tracking technology built into the phone or by attempting to triangulate the device's signal using data from several of the provider's cell towers. Depending on the capabilities of the particular phone and provider, E-911 data can sometimes provide precise information related to the location of a cellular device.

5

g.      In order to locate the **subject cellular telephone** and monitor the movements of the phone, the investigative agency(ies), and other authorized federal/state/local law enforcement agencies, may need to employ one or more techniques described in this affidavit and in the application of the United States. The investigative agency(ies), and other authorized federal/state/local law enforcement agencies, may seek a warrant to compel the Provider, any telecommunication service providers reflected in Attachment A to the requested Warrant and Order, to include providers of any type of wire and/or electronic communications (herein incorporated by reference), and any other applicable service providers, to provide precision location information, including Global Position System information (if available), transactional records, including cell site location information, and pen register and trap and trace data.

## INVESTIGATION AND PROBABLE CAUSE

7.      Based on the facts as set forth herein, there is probable cause to believe that Jonathan WARD has violated Title 21 United States Code, Section(s) 841(a) and 846. WARD was charged with these crimes on May 27, 2025 and is the subject of an arrest warrant issued on the same day. There is also probable cause to believe that the location information described in Attachment B will assist law enforcement in arresting WARD, who is a "person to be arrested" within the meaning of Federal Rule of Criminal Procedure 41(c)(4).

8.      The United States, including the United States Marshals Service, is conducting a fugitive investigation into the whereabouts of Jonathan WARD, the subject of a federal arrest warrant.

9.      On May 28, 2025, in the Eastern District of Missouri, an arrest warrant was issued for WARD, charging conspiracy to distribute and possess, with the intent to distribute, a mixture of substance containing a detectable amount of actual methamphetamine, a Schedule II controlled

6

substance, in violation of Title 21, United States Code, Sections 841(a)(1) and 846. WARD, and several others, were charged in case 4:25CR286 HEA/PLC. WARD's whereabouts are unknown.

10.     At the request of the Drug Enforcement Administration, in May 2025, the United States Marshals Service initiated a fugitive investigation for WARD.

11.     Your affiant was assigned the fugitive investigation and conducted a comprehensive pattern of life analysis for WARD, in an effort to locate and arrest him.

### Initial investigation into predecessor cellular telephone 1

12.     I quickly learned WARD was a longtime resident of California. DEA investigators told me of two residences associated with WARD in metropolitan Los Angeles, California that their investigation indicated were associated with WARD.

13.     WARD holds a valid California driver license.

14.     I conducted commercial database queries for information concerning WARD, which list an address history inclusive of residences in California for over a decade. I also conducted searches for California property tax records for information, and learned WARD was the homeowner of a residence in Hawthorne, California. That residence was also associated with Deborah FUENTES, who DEA investigators told me was WARD's paramour.

15.     The commercial database results also showed several possible telephone numbers for WARD, including (424) 443-1518 ("predecessor cellular telephone 1").

16.     In June 2025, I queried predecessor cellular telephone 1 in the public search function of the popular peer-to-peer payment platform Cash App. The platform allows the public to search for telephone numbers to query for accounts which individuals can be used to send and receive money. In the search for predecessor cellular telephone 1, I found a match for a user named

7

"Jonathan Ward" ($my3kids54). The username matched the exact spelling of WARD's first and last name.

17.    In June 2025, I requested DEA assistance in obtaining historical phone records for WARD. DEA investigators agreed and empowered through their administrative subpoena authority, requested 30 days of historical call records ("tolls") for predecessor cellular telephone 1.

18.    On June 6, 2025, DEA investigators furnished the requested data. The records, which revealed predecessor cellular telephone 1 was subscribed to FUENTES and included call patterns indictive of an actively used cellular telephone.

19.    Inclusive of more than 80 contacts, there were hundreds of listed calls. The most frequent contact, (323) 441-5336, was a number attributable to FUENTES.

20.    On June 24, 2025, in the Eastern District of Missouri, I applied for, and received a precision location search warrant, compelling the disclosure of precision location information and pen register and trap and trace data relative to predecessor cellular telephone 1 (4:25 MJ 1195 JMB).

21.    On June 24, 2025, I began to receive precision location information, and on June 25, telecommunications records related to the pen register and trap and trace.

22.    Analysis of the data determined WARD spent most of his time in the vicinity of 11803 Wilkie Ave. in Hawthorne, CA 90250, a home he owns and resides at with FUENTES.

23.    On July 9, 2025, a USMS arrest team, empowered though an Eastern District of Missouri arrest warrant as well as a Central District of California search warrant (2:25-MJ-04146) executed the search warrant at 11803 Wilkie. WARD was not located, and it was later determined he'd left the residence prior to the arrival of the arrest team.

24.    A review of the precision location information continued to show predecessor cellular telephone 1 in metropolitan Los Angeles, until approximately 3:49pm (Pacific time) on July 9, 2025. Predecessor cellular telephone 1 then powered off. Aside from one alert on July 10, 2025 at 12:34pm, predecessor cellular telephone 1 remained off, and WARD remains at large.

**Further investigation and discovery of the predecessor telephone 2**

25.    On July 14, 2025, I again requested the assistance from the DEA with respect to toll records. In my experience, when fugitives discontinue the use of their cellular telephones (as the "tracking" of cellular telephones is a known law enforcement tactic) to evade capture, they often procure new ones as a means to communicate with relatives and associates.

26.    On July 14, 2025, I requested tolls associated with predecessor cellular telephone 1's most frequent contacts: (323) 441-5336, (attributed to Deborah FUENTES), (310) 760-1340 and (323) 823-5136 (predecessor cellular telephone 1's second and third most common contacts, respectively), and (310) 936-6783 (predecessor telephone 1's 16th most frequent contact and the last outgoing call made by predecessor cellular telephone 1 before its use was discontinued). The DEA furnished the tolls to me the same day, along with a common call analysis, which showed only one number, (213) 649-6875 ( "predecessor telephone 2"), to be in contact with three of the aforementioned contacts (the predecessor cellular telephone 1 was in contact with all four), and predecessor telephone 2's use began on July 9, 2025, the day of the arrest attempt.

27.    DEA personnel also furnished toll records for predecessor telephone 2. Analysis of the records showed the predecessor telephone 2 began service (without a listed subscriber) on July 9, 2025.

28.    Additionally, comparing the common contacts between predecessor cellular telephone 1 and predecessor telephone 2, I noted 12 contacts in common between the numbers.

9

On July 15, 2025, in the Eastern District of Missouri, I applied for, and received a precision location search warrant, compelling the disclosure of precision location information and pen register and trap and trace data relative to predecessor cellular telephone 2 (4:25 MJ 7168 SPM). On July 16, 2025, I began to receive precision location information relative to predecessor telephone 2. I quickly identified a hotel in Los Angeles, California where the precision location information was concentrated.

29.     On July 17, 2025, I again requested the assistance of the USMS Central District of California with arresting WARD. USMS Central District of California investigators responded and eventually initiated surveillance in the vicinity of 8715 Ramsgate, an apartment complex in Los Angeles where the precision location information indicated predecessor telephone 2 to be. The apartment building was also listed as the address of record for Megan MANNING, who my investigation determined was both an associate of WARD, and also the primary resident of 8715 Ramsgate, Apartment 201, Los Angeles, California.

30.     Soon thereafter, USMS Central District of California investigators saw WARD exit the apartment building. USMS personnel contacted WARD, who ran away from the investigators. USMS personnel gave chase, but WARD made good his escape, dropping two cellular telephones while running away. WARD remains at large.

### Further investigation and discovery of the predecessor telephone 3

31.     On July 21, 2025, I again requested DEA assistance in ordering tolls, in an effort to identify yet another cellular telephone for WARD. Specifically, I requested tolls for six (6) common contacts between predecessor telephone 1 and predecessor telephone 2, as well as one of Deborah FUENTES' cellular telephones. Later on July 21, 2025, DEA investigators furnished the historical records.

10

32.     One number in particular, (562) 703-9045 (the "predecessor telephone 3"), quickly emerged as a likely cellular telephone used by WARD.

33.     Predecessor telephone 3, which did not have a subscriber, initiated service on July 10, 2025 (after the discontinuation of the use of predecessor telephone 2).

34.     Predecessor telephone 3 had 11 contacts in common with predecessor telephone 2 and was in use (making and receiving calls and text messages) as recently as July 17, 2025. The contacts included MANNING (via telephone (310) 920-9619, whose apartment is where the foot chase commenced on July 17, 2025), as well as ten (10) other contacts, and telephone number (310) 419-1234 (attributable to the Motel 6 LAX on July 16, 2025, where predecessor telephone 2 stayed during the overnight of July 16-17, 2025).

35.     On July 22, 2025, in the Eastern District of Missouri, I applied for, and received, a precision location warrant for predecessor telephone 3 (4:25 MJ 6150 PLC). On July 23, 2025, I was informed from T-Mobile that predecessor cellular telephone 3 had not been used since July 17, 2025 (the day of the failed foot chase of WARD.

**Further investigation and discovery of the subject cellular telephone**

36.     Believing WARD would again procure a new cellular telephone, and on July 25 and 28, 2025, I again requested DEA assistance with a request for historical tolls, once again using numbers the precious telephones had been in contact with.

37.     On July 28, 2025, DEA investigators furnished the results of the tolls. Based on an analysis of common contacts, DEA investigators and I quickly identified telephone number **(747) 243-8703** (the "**subject cellular telephone**") as a new number for WARD. The **subject cellular telephone** was subscribed to "James Gray" at 5050 W PICO BLVD LOS ANGELES CA 90019-0503.

38.    I conducted database searches and was unable to identify anyone named "James Gray" or anyone with the last name "Gray" associated with 5050 W PICO BLVD LOS ANGELES CA 90019-0503.

39.    The **subject cellular telephone** initiated service on July 18, 2025, the day after the failed foot chase in Los Angeles.

40.    The **subject cellular telephone** had 15 contacts in common with at least one of the aforementioned predecessor telephones. Specifically, six (6) of the contacts were in common with two of the predecessor telephones, and nine (9) with one of the predecessor telephone numbers.

41.    The most frequent contact, (310) 561-9485, was also subpoenaed and found to have initiated service on July 18, 2025 and did not have a subscriber. I found this similar pattern with predecessor telephone 2, which also had a top contact which was a newly-initiated number. Predecessor telephone 1's most frequent contact was FUENTES, WARD's wife. In my experience, fugitives will often procure, of have loved ones procure, new numbers for the loved ones to also help mask their usage of new telephones.

42.    The usage for the **subject cellular telephone** initiated service on July 18, 2025, and has usage as recently as July 28, 2025.

43.    In my experience, fugitives who initiate the use of a new cellular telephone (or telephones, as is often the case with fugitives and narcotics traffickers specifically) often remain in contact with known associates. Based on the initiation of the **subject cellular telephone** number after the arrest attempt on July 17, 2025; its volume of contacts in common with predecessor telephone 1, predecessor telephone 2, and predecessor telephone 3, as well as its use as recently as July 28, 2025, I believe the **subject cellular telephone** to be WARD's new telephone.

12

## CONCLUSION

44.     Based on the above information, there is probable cause to believe that the **subject cellular telephone** is being used by Jonathan WARD, who is the subject of an active federal arrest warrant.

45.     On May 28, 2025, in the Eastern District of Missouri, an arrest warrant was issued for WARD, charging conspiracy to distribute and possess with the intent to distribute a mixture of substance containing a detectable amount of actual methamphetamine, a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and 846. WARD, and several others, were charged in case 4:25CR286 HEA/PLC. WARD's whereabouts are presently unknown.

46.     There is likewise probable cause to conclude that locating and monitoring the movements of the **subject cellular telephone** will lead to the location and arrest of WARD.

47.     None of the investigative techniques that may be employed as a result of the present application and affidavit require a physical intrusion into a private space or a physical trespass. Electronic surveillance techniques such as pen register and cell site location monitoring typically have not been limited to daytime use only. Furthermore, the criminal conduct being investigated is not limited to the daytime. Therefore, the fact that the present application requests a warrant based on probable cause should not limit the use of the requested investigative techniques to daytime use only. Accordingly, the investigative agency(ies), and other authorized federal/state/local law enforcement agencies, request the ability to employ these investigative techniques at any time, day, or night.

48.     The monitoring of the location of the **subject cellular telephone** by one of the

13

methods described herein will begin within ten (10) days of the date of issuance of the requested

Warrant and Order.

**I state under the penalty of perjury that the foregoing is true and correct.**

7/29/2025

DATE

Drew Polan
Senior Inspector
United States Marshals Service

**Sworn to, attested to, or affirmed before me via reliable electronic means pursuant to Federal Rules of Criminal Procedure 4.1 and 41 on** 29th **day of July, 2025.**

SHIRLEY P. MENSAH
UNITED STATES MAGISTRATE JUDGE
Eastern District of Missouri

14

**ATTACHMENT A**

The United States has submitted an application pursuant to 18 U.S.C. §§ 2703(c)(1)(A) &

B, (c)(2), and 3122 and Federal Rule of Criminal Procedure 41 requesting that the Court issue a

Warrant and Order requiring a telecommunications service provider reflected in Part II of this

Attachment A, to disclose the records and other information concerning the account described in

Part I of this Attachment A.

I.    **The Account(s)**

The Order applies to certain records and information associated with the following:

| Provider Name | Number or identifier | Owner, if known | Subject of investigation, if known |
|---|---|---|---|
| T-MOBILE | **(747) 243-8703** (the **subject cellular telephone**) | Unknown | **Jonathan WARD** |

II.    **The Provider**

Records and information associated with the **subject cellular telephone** that is within the

possession, custody, or control of T-MOBILE, and other applicable service providers reflected on

the list contained in this Attachment A, including information about the location of the **subject**

**cellular telephone** if it is subsequently assigned a different call number.

1

## LIST OF TELECOMMUNICATION SERVICE PROVIDERS

| | | | |
|---|---|---|---|
| 01 Communications | Egyptian Telephone | Mid-Atlantic | Socket Telecom |
| Access Line Communication | Electric Lightwave, Inc. | Midvale Telephone Exchange | Spectrum |
| ACN, Inc. | Empire Paging | Mobile Communications | Sprint |
| ACS | Ernest Communications | Mound Bayou Telephone Co. | SRT Wireless |
| Aero Communications, Inc. (IL) | EZ Talk Communications | Mpower Communications | Star Telephone Company |
| Afford A Phone | FDN Communications | Navigator | Start Wireless |
| Airvoice Wireless | Fibernit Comm |    Telecommunications | Sugar Land Telephone |
| Alaska Communications | Florida Cell Service | NE Nebraska Telephone | Sure West Telephone Company |
| Alhambra-Grantfx Telephone | Florida Digital Network | Netlink Comm | Talk America |
| Altice USA | Focal Communications | Network Services | Tele Touch Comm |
| AmeriTel | Frontier Communications | Neustar | Telecorp Comm |
| AOL Corp. | FuzeBox, Inc. | Neutral Tandem | Telepak |
| Arch Communications | Gabriel Comm | Nex-Tech Wireless | Telispire PCS |
| AT&T | Galaxy Paging | Nexus Communications | Telnet Worldwide |
| AT&T Mobility | Global Communications | NII Comm | Tex-Link Comm |
| Bell Aliant | Global Eyes Communications | North Central Telephone | Time Warner Cable |
| Big River Telephone | Global Naps | North State Comm | T-Mobile |
| Birch Telecom | Grafton Telephone Company | Northcoast Communications | Total Call International |
| Blackberry Corporation | Grand River | Novacom | Tracfone Wireless |
| Brivia Communications | Grande Comm | Ntera | Trinity International |
| Broadview Networks | Great Plains Telephone | NTS Communications | U-Mobile |
| Broadvox Ltd. | Harrisonville Telephone Co. | Oklahoma City SMSA | United Telephone of MO |
| Budget Prepay | Heartland Communications | ONE Communications | United Wireless |
| Bulls Eye Telecom | Hickory Telephone | ONSTAR | US Cellular |
| Call Wave | Huxley Communications | Optel Texas Telecom | US Communications |
| Cbeyond Inc. | iBasis | Orion Electronics | US LEC |
| CCPR Services | IDT Corporation | PacBell | US Link |
| Cellco Partnership, | Illinois Valley Cellular | PacWest Telecom | US West Communications |
|   d/b/a Verizon Wireless | Insight Phone | PAETEC Communications | USA Mobility |
| Cellular One | Integra | Page Plus Communications | VarTec Telecommunications |
| Cellular South | Iowa Wireless | Page Mart, Inc. | Verisign |
| Centennial Communications | IQ Telecom | Page Net Paging | Verizon Telephone Company |
| CenturyLink | J2 Global Communications | Panhandle Telephone | Verizon Wireless |
| Charter Communications | Leap Wireless International | Peerless Network | Viaero Wireless |
| Chickasaw Telephone | Level 3 Communications | Pineland Telephone | Virgin Mobile |
| Choctaw Telephone Company | Locus Communications | PhoneTech | Vonage Holdings |
| Cimco Comm | Logix Communications | PhoneTel | Wabash Telephone |
| Cincinnati Bell | Longlines Wireless | Preferred Telephone | Wave2Wave Communications |
| Cinergy Communications | Los Angeles Cellular | Priority Communications | Weblink Wireless |
| Clear World Communication | Lunar Wireless | Puretalk | Western Wireless |
| Com-Cast Cable Comm. | Madison River | RCN Telecom | Westlink Communications |
| Commercial Communications |   Communications | RNK Telecom | WhatsApp |
| Consolidated Communications | Madison/Macoupin Telephone | QWEST Communications | Windstream Communications |
| Cox Communications |   Company | Sage Telecom | Wirefly |
| Cricket Wireless | Mankato Citizens Telephone | Seren Innovations | XFinity |
| Custer Telephone Cooperative | Map Mobile Comm | Shentel | XO Communications |
| DBS Communications | Marathon Comm | Sigecom LLC | Xspedius |
| Delta Communications | Mark Twain Rural | Sky Tel Paging | Yakdin Valley Telephone |
| Detroit Cellular | Max-Tel Communications | Smart Beep Paging | YMAX Communications |
| Dobson Cellular | Metro PCS | Smart City Telecom | Ztel Communications [1] |
| | Metro Teleconnect | | |

---

[1] Last Update: 03/17/2019

**ATTACHMENT B**

It is hereby ordered, pursuant to 18 U.S.C. §§ 2703(c)(1)(A) &(B), (c)(2) and 3123 and Federal Rule of Criminal Procedure 41, that the Provider(s) identified in Attachment A shall disclose to the United States the following:

**I.    PRECISION LOCATION INFORMATION**

**A.    Information to be Disclosed by the Provider**

All information for the following time period of forty-five days from the date of this Warrant and Order, that is for the time period from July 29, 2025, to September 11, 2025, 11:59 p.m. (CT) during all times of day and night, regarding the location of the **subject cellular telephone** described in Attachment A.

"Information about the location of the **subject cellular telephone**" includes all available E-911 Phase II data, GPS data, latitude-longitude data, and other precision location information, as well as all data about which "cell towers" (*i.e.*, antenna towers covering specific geographic areas) and "sectors" (*i.e.*, faces of the towers) received a radio signal from the cellular telephone described in Attachment A.

To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of the Provider, the Provider is required to disclose the Location Information to the investigative agency(ies).

**B.    Information to Be Seized by the United States**

All information described above in Part I, Section A that will assist in arresting **Jonathan WARD**, who was charged with violating Title 21, United States Code, Sections 841(a)(1) and

1

846 and is the subject of an arrest warrant issued on May 28, 2025, and is a "person to be arrested" within the meaning of Federal Rule of Criminal Procedure 41(c)(4).

## II.    CELL TOWER RECORDS AND OTHER TELECOMMUNICATION DATA

For the **subject cellular telephone** identified in Attachment A, the following telecommunication records, and information, but not the contents of any communication for the past thirty (30) days from the date of this Warrant and Order and at reasonable intervals for up to forty-five (45) days from the date of this Warrant and Order, the following:

**Information to be Disclosed by the Provider**

1.    All available names, addresses, and identifying information, and other subscriber and service feature information and types of service utilized;

2.    Length of service;

3.    All telephone numbers, Electronic Serial Number ("ESN"), a Mobile Electronic Identity Number ("MEIN"), a Mobile Identification Number ("MIN"), a Subscriber Identity Module ("SIM"), an International Mobile Subscriber Identifier ("IMSI"), a Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"), or an International Mobile Station Equipment Identity ("IMEI") numbers, including any and all customer service records, credit and billing records, can-be-reached numbers (CBR), enhanced custom calling features, and primary long-distance carrier;

4.    Subscriber information available for any originating telephone number;

5.    Automated Messaging Accounting (AMA) records (a carrier billing mechanism data base search which provides records of originating and terminating caller information for calls to the **subject cellular telephone**) for the above-specified time period;

2

6.      Means and source of payment for services, including any credit card or bank account number, and air-time summaries for available service periods, for the IP (internet protocol) addresses being utilized by and signaled to and from the aforementioned **subject cellular telephone**;

7.      Cellular telephone records and information pertaining to the following, for the above-specified time period:

(a)      call detail information such as (provided in an electronic format specified by the agents/officers of the investigative agency(ies), and other authorized federal/state/local law enforcement agencies);

(b)      cell site activation information, including information identifying the antenna tower receiving transmissions from the **subject cellular telephone** number, and any information on what portion of that tower is receiving a transmission from the **subject cellular telephone** number, at the beginning and end of a particular telephone call made to or received by the **subject cellular telephone** number;

(c)      numbers dialed;

(d)      call duration;

(e)      incoming numbers if identified;

(f)      signaling information pertaining to that number;

(g)      a listing of all control channels and their corresponding cell sites;

(h)      an engineering map showing all cell site tower locations, sectors, and orientations;

3

        (i)      subscriber information, including the names, addresses, credit, and billing information, published and non-published for the telephone numbers being dialed from the **subject cellular telephone**;

        (j)      historical location estimates and range to tower information, such as Network Event Location System (NELOS), round-trip time (RTT), GPS, and per-call measurement data (PCMD), True Call; and,

        (k)      Internet Protocol (IP addresses) utilized by and signaled to and from the **subject cellular telephone**.

## III.    PEN REGISTERS AND TRAP AND TRACE DEVICES

For the **subject cellular telephone** identified in Attachment A for a period of forty-five (45) days from the date of this Warrant and Order, the following:

1.    Pursuant to Title 18, United States Code, Section 3123, pen register and trap and trace devices, including enhanced caller identification, may be installed by the investigative agency(ies) and used to record or decode dialing, routing, addressing, or signaling information, and to capture the incoming electronic or other impulses, which identify the originating number or other dialing, routing, addressing and signaling information reasonably likely to identify the source of a wire or electronic communication to and from the **subject cellular telephone** number, including the direct connect, Voice-over-LTE (VoLTE), non-content data transmissions, or digital dispatch dialings (if applicable), the dates and times of such dialings, and the length of time of the connections, pertaining to the **subject cellular telephone** described in Attachment A, including the date, time, and duration of the communication, and the following, without geographic limit, including:

a.  IP addresses associated with the cell phone device or devices used to send or receive electronic communications;

b.  Any unique identifiers associated with the cell phone device or devices used to make and receive calls with cell phone number described in Attachment A, or to send or receive other electronic communications, including the ESN, MEIN, IMSI, IMEI, SIM, MSISDN, or MIN;

c.  IP addresses of any websites or other servers to which the **subject cellular telephone** connected;

d.  Source and destination telephone numbers and email addresses;

e.  "Post-cut-through dialed digits," which are digits dialed after the initial call set up is completed, subject to the limitations of 18 U.S.C. § 3121(c).

2.    The Provider, and/or any telecommunications service providers reflected in Attachment A, to include providers of any type of wire and/or electronic communications, and any other applicable service providers, shall initiate caller identification on the **subject cellular telephone** identified in Attachment A, without the knowledge of or notification to the subscriber, for the purpose of registering incoming telephone numbers.

3.    The Providers reflected in Attachment A, to include providers of any type of wire and/or electronic communications, and any other applicable service providers, shall furnish the agents/officers of the investigative agency(ies), and other authorized federal/state/local law enforcement agencies, forthwith all information, facilities, and technical assistance necessary to accomplish the installation and use of the pen register and trap and trace devices, including

enhanced caller identification, unobtrusively and with minimum interference to the services that are accorded persons with respect to whom the installation and use is to take place.

4.　　The Providers reflected in Attachment A, to include providers of any type of wire and/or electronic communications, and any other applicable telecommunications service providers, shall provide the agents/officers of the investigative agency(ies), and other authorized federal/state/local law enforcement agencies, with the results of the pen register and trap and trace devices, including enhanced caller identification, at reasonable intervals for the duration of this Warrant and Order.

5.　　Should the **subject cellular telephone** identified in Attachment A and/or ESN, MIN, IMEI, MSID or IMSI number listed above be changed by the subscriber during the effective period of this Order, the request for pen register and trap and trace devices, including enhanced caller identification, shall remain in effect for any new telephone to which the **subject cellular telephone** listed above is changed throughout the effective period of these Warrants and Orders.

6.　　The Providers reflected in Attachment A, to include providers of any type of wire and/or electronic communications, and any other applicable service providers, shall be provided compensation by the lead investigative agency for reasonable expenses incurred in providing technical assistance.

7.　　Pursuant to Title 18, United States Code, Sections 3123(d)(1) and (2), the Provider, and the service providers reflected in Attachment A, to include providers of any type of wire and/or electronic communications, and any other applicable service providers, shall not disclose the existence of this application and/or any warrant or order issued upon this application, or the existence of the investigation, for a period of one year from the date of this Order to a subscriber

6

or lessee or to any other person, except that the provider may disclose the warrant to an attorney for the provider for the purpose of receiving legal advice.

This Warrant and Order does not authorize interception of any communications as defined in Title 18, United States Code, Section 2510(4), but authorizes only the disclosure of signaling information, including cell site information, precision location information, including GPS information, related to the **subject cellular telephone**.

The investigative agency(ies), and other authorized federal/state/local law enforcement agencies, to whom this Warrant and Order is directed will begin monitoring the location of the **subject cellular telephone** by one of the methods described in this Warrant within ten (10) days of the date of this Warrant and Order.

7